February 10, 1992

468

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

ESTEVAN I. ROGOLOFOI, as ) APPEAL NO. 91-005
Administrator of the Estate ) CIVIL ACTION NO. 89-1149
of Antonio T. Rogolofoi, )
 )
 Plaintiff/Appellant, )
 )
 vs. ) OPINION
 )
HERMAN R. GUERRERO, )
 )
 Defendant/Appellee. )
_____)

Argued October 18, 1991

Counsel for Plaintiff/Appellant: Reynaldo O. Yana
 P. O. Box 52
 Saipan, MP 96950

Counsel for Defendant/Appellee: Douglas F. Cushnie
 P. O. Box 949
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

BORJA, Justice:

This is an appeal by the administrator of the estate of Antonio T. Rogolofoi. The issue is whether the dismissal of the action by the Superior Court, under Rule 41(b), Com.R.Civ.P., was reversible error. We affirm.

470

## FACTS

Estevan I. Rogolofoi, as administrator of the estate of Antonio T. Rogolofoi (hereafter Rogolofoi), filed a complaint on December 18, 1989, against Herman R. Guerrero (hereafter Guerrero). Rogolofoi filed an amended complaint on December 21, 1989.

The trial court dismissed the amended complaint under Rule 12(b)(6), Com.R.Civ.P., but allowed Rogolofoi to file another amended complaint. Rogolofoi filed a second amended complaint on February 15, 1990.

Guerrero then moved for summary judgment based primarily on three documents that he attached to his motion. These documents were: 1) a quitclaim deed by Felisita R. Lisua, a child of Antonio T. Rogolofoi, on her behalf and on behalf of all the other children of Antonio T. Rogolofoi to Guerrero on A.H. 329; 2) a release signed by all the children releasing all their interest in A.H. 329 to Guerrero in exchange for a conveyance of 3,000 square meters coming out of the same land; and 3) a power of attorney executed by all the children to Felisita R. Lisua, to "grant, bargain, sell, convey, or contract for the sale and conveyance of any interest" to A.H. 329. (Rogolofoi introduced these documents into evidence during trial as Exhibits 5, 6, and 7, respectively.) Guerrero argued that even if all the allegations of Rogolofoi's complaint were true, the documents signed by the children of the deceased vested title in him. The trial court denied the motion. It held that Rogolofoi raised sufficient factual issues to proceed to trial

471

and prove, if he could, that the three documents were procured by Guerrero's fraud.

When Rogolofoi rested his case during the trial, Guerrero moved for involuntary dismissal under Rule 41(b). The trial court granted the motion.

Rogolofoi filed suit based on three causes of action. His first cause of action was that the children of Antonio T. Rogolofoi, deceased, are the owners of A.H. 329 and Guerrero should be ejected from the land (this is a quiet title and ejectment action). His second cause of action was that Carmen I. Rogolofoi, the widow of Antonio T. Rogolofoi, deceased, conveyed only a life estate to Guerrero. As the widow, she only received a life estate.[1] When she died, Herman's estate ended. The last cause of action alleged that Guerrero defrauded the widow and the children. Rogolofoi alleged that Guerrero induced the widow to deed A.H. 329 to Guerrero based on his representation that he would return the land to the widow and the children. Rogolofoi alleged that Guerrero knew when he made the statement that his representation was false.

Guerrero admitted in his answer that Antonio T. Rogolofoi received a certificate of compliance on A.H. 329 on April 15, 1965, from the Government of the Trust Territory of the Pacific Islands. He also admitted that the government issued a quitclaim deed to

---

[1]Rogolofoi abandoned this cause of action during trial. Brief of Appellant at 1.

472

Antonio T. Rogolofoi on June 30, 1969. He further admitted that Antonio T. Rogolofoi died intestate on December 4, 1969, and was survived by his wife, Carmen, and his seven children. One of the decedent's children is the administrator bringing the lawsuit in the name of the estate.

As affirmative defenses, Guerrero stated in two paragraphs that Rogolofoi had waived all claims, and was estopped by deed to assert any claims to A.H. 329. The defenses referred to the three documents later introduced at trial as exhibits 5, 6, and 7, and to a quitclaim deed signed by the widow sometime after the death of Antonio T. Rogolofoi.

## ISSUE PRESENTED[2]

The sole issue under review is whether the dismissal under Rule 41(b) was reversible error.

## STANDARD OF REVIEW

In reviewing a Rule 41(b) dismissal, a court has to review

---

[2]We disagree with the issues as stated by Rogolofoi. The stated issue of the trial court's failure to consider formation of a trust, and the invalidity of the release for lack of consideration is a sub-issue within the broader issue stated above. (Rogolofoi is wrong when he states in his issue that the court failed to consider fraud. The trial court did consider fraud, but ruled against Rogolofoi.) Furthermore, the standard is not abuse of discretion for the sub-issue. A discussion of the sub-issue is included in the discussion on the propriety of the dismissal under Rule 41(b).

Rogolofoi's stated issue of a prima facie case of ownership and fraud is incorrect. Our discussion on the propriety of the dismissal under Rule 41(b) shows that there can be no issue of establishing a prima facie case under Rule 41(b).

conclusions of law de novo, and the findings of fact are subject to the clearly erroneous standard. Castro v. Castro, No. 89-020 (N.M.I. Oct. 22, 1991).

## ANALYSIS

Rule 41(b), Com.R.Civ.P., in pertinent part, states that:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

In Castro v. Castro, supra, we quoted 27 Fed Proc, L Ed Pleadings and Motions § 62:519 (1984) for the proposition that:

> When the defendant moves for a dismissal under FRCP 41(b) at the close of the plaintiff's case, the trial court, as the trier of fact, is required to determine whether the plaintiff has proven its claim. The court is not required to view the evidence in the light most favorable to the plaintiff, or make any special inferences in the plaintiff's favor, but rather must weigh and evaluate the evidence, resolve any conflicts in the evidence, and decide issues of credibility. The court may grant the motion for an involuntary dismissal if, from the record as it stands at the end of the plaintiff's case, the court is convinced that the plaintiff has not established his case by a preponderance of the evidence. The court is not required to deny an FRCP 41(b) motion to dismiss merely because the evidence, viewed in the light most favorable to the plaintiff, is

474

> sufficient to make out a prima facie case. In deciding whether the plaintiff has established its case by a preponderance of the evidence, the court considers all the evidence, whether direct or circumstantial evidence, and whether such evidence was introduced on direct or cross-examination.

Castro v. Castro, slip op. at 4-5.

We will first review the trial court's findings of fact under the clearly erroneous standard.

Seven witnesses testified in the presentation of Rogolofoi's case. From the testimony of five of the seven witnesses, the trial court made the following findings of fact:

1. Guerrero met with the children of Antonio T. Rogolofoi;

2. At such meeting, Guerrero obtained the agreement of the children to transfer A.H. 329 to him and he would lease or sell it, giving the children "their share";

3. The promise by Guerrero to give the children "their share" meant that he was to give 3,000 square meters of land to the children.

The testimony is clear that Guerrero would return some land back to the children of Antonio T. Rogolofoi. What that portion of land was is disputed. Rogolofoi maintains that all the land was to be returned. Guerrero, on the other hand, maintains that only 3,000 square meters was to be returned, and he is still going to do this.

It is clear that what the trial court did was weigh and evaluate the evidence, resolve conflicts in the evidence, and

475

decide issues of credibility. This was what it was supposed to do under Rule 41(b). *Castro v. Castro*, *supra*.

In *In re the Estate of Rofaq*, No. 89-019, slip op. at 12 (N.M.I. Feb. 22, 1991), we stated that,

> A finding is clearly erroneous when, even though some evidence supports it, the entire record produces the definite and firm conviction that the court below committed a mistake. We will accord particular weight to a trial judge's assessment of conflicting and ambiguous evidence. The test is whether the trial court could rationally have found as it did, rather than whether the reviewing court would have ruled differently.

(Citations omitted.) In reviewing the record in this appeal, we do not arrive at a definite and firm conviction that the trial court committed a mistake. We will not set aside the trial court's findings of fact. The trial court was not clearly erroneous with its findings of fact.

We now address the trial court's conclusion of law de novo.

The trial court concluded in its order of dismissal that Rogolofoi did not prove any misrepresentation by Guerrero and therefore no fraud.

In *Restatement (Second) of Contracts* § 162(1) (1981)[3], it is stated that:

> (1) A misrepresentation is fraudulent if the maker intends his assertion to induce a party to manifest his assent and the maker

---

[3]In the absence of written law or local customary law to the contrary, the rules of the common law, as expressed in the restatements of the law are the rules of decision in our courts. 7 CMC § 3401.

> (a) knows or believes that the assertion is not in accord with the facts, or
>
> (b) does not have the confidence that he states or implies in the truth of the assertion, or
>
> (c) knows that he does not have the basis that he states or implies for the assertion.

The trial court found no false representation made by Guerrero. It found that the representation made by Guerrero was to return a certain amount of land, not the entire land. It further found that Guerrero had not reneged on this promise. Guerrero testified that he acknowledged his obligation to the children for 3,000 square meters of land and that he would satisfy his obligation.

One of the elements of a fraudulent misrepresentation is that the misrepresentation must be consciously false.[4] The trial court concluded that this element was not proven. Based on its findings, its legal conclusion is correct.

During the trial, Rogolofoi further attempted to invalidate the quitclaim deed (Exhibit 5), the release (Exhibit 6), and the power of attorney (Exhibit 7) by raising the additional defense of formation of a trust. Another attempted defense to the release was lack of consideration.

The trial judge stated that he would not consider such defenses because they were not pleaded. He said it was too late. He stated that it was enough of a consideration to Rogolofoi that

---

[4]"In order that a misrepresentation be fraudulent within the meaning of this Section, it must not only be consciously false but must also be intended to mislead another." Id., Comment a.

477

he allowed the fraud theory in because it was not pleaded either.

The trial judge was erroneous in his statement.

There is no requirement under Rule 8, Com.R.Civ.P., to plead to an affirmative defense. It is clear under Rule 8(c) that failure of consideration and fraud must be set forth as affirmative defenses, or else they will be waived. However, for a plaintiff to waive such defenses, the defendant must have filed properly designated counterclaims. Had Guerrero's defenses been properly designated as counterclaims, Rogolofoi would have been required to file a reply. However, neither the parties nor the trial court thought of properly designating Guerrero's defenses as counterclaims.[5] See Rule 8(c), Com.R.Civ.P. ("When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.")

Without the proper designation, it was error for the trial court to say that Rogolofoi should have pleaded his theories of the formation of a trust and the lack of consideration. As stated in United States v. Gray, 552 F.Supp. 943 (N.D. Ill. 1982),

---

[5]The manner in which the exhibits came before the court and the court's view of them led to the sorry state of the procedural history of this case. Rogolofoi made no mention of the three exhibits in his complaint, although two of them (Exhibits 5 & 7) were recorded with the Commonwealth Recorder and therefore available. The three exhibits were brought to the court's attention by Guerrero when he pleaded the defense of estoppel by deed. Rogolofoi raised the two additional defenses during trial when the trial court intimated that the validity of the three exhibits would determine the case.

"[P]laintiff had not been required to respond to the affirmative defense, even if it was in substance a counterclaim, because it was not denominated as such."[6]

 The trial court should have considered Rogolofoi's additional theories of lack of consideration for the release, and formation of a trust for all three documents. However, such failures were harmless errors.

Even if the trial court considered the validity of the release and concluded that it was void because of a lack of consideration, Rogolofoi still did not introduce any evidence of fraudulent misrepresentation as to the procurement of the quitclaim deed and power of attorney.[7] If the deed is valid, as the court found, then Guerrero would still hold title to the land. This would be so regardless of the validity or invalidity of the release. The deed has language similar to the release and accomplishes the same thing.[8]

---

[6] Our Rule 8(c) is exactly the same as Rule 8(c) of the Federal Rules of Civil Procedure. Interpretations of federal Rule 8(c) by federal courts would be helpful to this Court. Lucky Development Co., Ltd. v. Tokai U.S.A., Inc., No. 91-003 (N.M.I. April 16, 1991) (order striking opposition memorandum and denying motion to dismiss).

[7] During the trial, Rogolofoi agreed with the trial court that the only issue to be tried was whether the three exhibits were procured by fraud. He agreed that the validity of the quitclaim deed signed by the widow was not relevant. Transcript, at 47, 51, 58-60, and 71-72.

[8] The release states that the children "release and grant all our interest and rights to Homestead 329 to Herman R. Guerrero and his heirs." The quitclaim deed, signed by Felisita R. Lisua on 

479

The trial court had no need to consider the argument of the formation of a trust by the procurement of the three documents.

A constructive trust is established when a transferee of property would be unjustly enriched if he were to retain it. As stated in Restatement of Restitution, § 160 (1937): "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." An unjust enrichment situation includes a transfer of property induced by fraud or other unconscionable conduct. "Where the owner of property transfers it, being induced by fraud, duress or undue influence of the transferee, the transferee holds the property upon a constructive trust for the transferor." Id. § 166.

Rogolofoi did not show that Guerrero obtained the three documents through fraud or other unconscionable conduct. Rogolofoi did not otherwise prove that Guerrero would be unjustly enriched if all the land was not returned to the children.

The express trust theory falls because the court did not find any proof that there was an agreement to return all the land. In effect, he found an express trust as to 3,000 square meters. However, the court noted that Guerrero admitted that he owed this amount and that he would perform his obligation to return this

---

behalf of all the children, states that she "remise, release and forever quitclaim unto Herman R. Guerrero . . . all my right, title, claim and interest in and to [A.H. 329]"

480

portion of the land.

### CONCLUSION

The trial court's order of dismissal is **AFFIRMED**.

Jose S. Dela Cruz
Chief Justice

Ramon G. Villagomez
Justice

Jesus C. Borja
Justice